# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

JUSTIN R. BLEVINS,

                   Petitioner,           :     Case No. 2:21-cv-137

    - vs -                           District Judge James L. Graham
                                     Magistrate Judge Michael R. Merz

RON ERDOS, Warden,
  Southern Ohio Correctional Institution,

                               :

            Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus, brought pursuant to 28 U.S.C. § 2254 by Petitioner Justin Blevins with the assistance of counsel, is before the Court for decision on the merits on the Petition (ECF No. 1), the State Court Record (ECF No. 8), the Warden's Return of Writ (ECF No. 9), and Petitioner's Reply/Traverse (ECF No. 13).  The Magistrate Judge reference in the case has been transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 14).

**Litigation History**

Petitioner was indicted by the Pickaway County Grand Jury on July 7, 2017, on one count of Aggravated Murder in violation of Ohio Revised Code § 2903.01(A), one count of Murder in violation of Ohio Revised Code § 2903.02(A), one count of Murder in violation of Ohio Revised Code § 2903.02(B), and one count of Felonious Assault in violation of Ohio Revised Code § 2903.11(A)(2),

all with firearm specifications. (Indictment, State Court Record, ECF No. 8, Ex. 1). The case was tried to a jury which convicted Blevins on all counts and specifications. After his motion for new trial was denied, he was sentenced to thirty years to life imprisonment for aggravated murder plus the three-year required minimum on the firearm specification.

Blevins appealed to the Fourth District Court of Appeals raising seven assignments of error (Appellant's Brief, State Court Record, ECF No. 8, Ex. 10). That court affirmed. *State v. Blevins,* 140 N.E.3d 27, 2019-Ohio-2744 (Ohio App. 4th Dist. Jun. 26, 2019). The Supreme Court of Ohio declined appellate jurisdiction. *State v. Blevins*, 157 Ohio St. 3d 1441 (2019).

Blevins pleads the following grounds for relief:

> **Ground One**: Defective Jury Instruction as to Manslaughter.
>
> **Supporting Facts:** Evidence was adduced at trial to demonstrate that Petitioner had been threatened by the deceased. The trial court's instruction on voluntary manslaughter directed the jury to consider it as if it were a lesser-included offense (only applicable if Petitioner was not guilty of Aggravated Murder and Murder), rather than an inferior degree offense (applicable if Petitioner was guilty of Aggravated Murder or Murder, but the jury found mitigating circumstances existed). On appeal, the State agreed that the instruction was defective.
>
> **Ground Two**: Erroneous Answer to Jury Questions
>
> **Supporting Facts:** During deliberations, the jury asked a question which expressed confusion as to the circumstances under which it was to consider the inferior offense of voluntary manslaughter. The trial court instructed the jury to refer to the instructions in the verdict form which, as discussed in Ground One, were contrary to law.
>
> **Ground Three**: Ineffective Assistance of Trial Counsel
>
> **Supporting Facts:** Trial counsel (1) failed to object to the defective jury instruction, (2) failed to object to the erroneous answer provided in response to the jury's question during deliberations, (3) induced a detective to remark on Petitioner's invocation of his right to remain silent, (4) elicited a detective's opinion as to Petitioner's guilt, (5) failed to effectively impeach a witness about Petitioner's purported incriminating statements, and (6) failed to object to the

State's mischaracterization of that testimony. Trial counsel admitted several of these errors in a Motion for New Trial and its associated exhibits.

**Ground Four:** Insufficient Evidence Regarding Prior Calculation and Design to Support Conviction for Aggravated Murder

**Supporting Facts:** Petitioner entered the residence armed. Prior to the incident, he sent a message to a friend via Facebook which contained a photo of a firearm similar to that found at the scene and a message that he "had to take care of some B.S." Petitioner testified that this statement was in reference to a different situation where he had been robbed, not the monetary dispute he had with the deceased. Petitioner testified that he brought the firearm to the residence because he had felt threatened by the deceased.

**Ground Five:** Petitioner was excluded from the trial court's formulation of answers to jury questions.

**Supporting Facts:** During deliberations, the jury submitted written questions to the trial court. The discussion of how to respond to those questions was not conducted on the record. As such, only the written questions and the trial court's written answers are included in the record. The first question and the trial judge's answer are the subject of Petitioner's Second Ground for Relief. Though posttrial and appellate filings indicate that counsel was likely advised of the jury's questions, Petitioner was not present at any time.

(Petition, ECF No. 1, PageID 5-10 and 17).


# Analysis


**Ground One**: **Defective Jury Instruction as to Manslaughter**


In his First Ground for Relief, Petitioner asserts the trial court's instruction on voluntary manslaughter was defective. Respondent asserts this Ground for Relief is procedurally defaulted for lack of a contemporaneous objection and that it does not state a claim cognizable in habeas

corpus, i.e., for violation of the Constitution (Return, ECF No. 9, PageID 939-48).

Blevins presented his First Ground for Relief to the court of appeals as his Second Assignment of Error and the court decided it as follows:

> {¶26} In his second assignment of error, Appellant contends the trial court provided the jury with a defective voluntary manslaughter instruction that rose to the level of plain error and deprived him of his rights under the Sixth and Fourteenth Amendments to the United States Constitution to a jury determination of his guilt of a less serious offense than the aggravated murder and murder counts of the indictment. The State concedes the voluntary manslaughter instructions were erroneous to the extent the instructions treated voluntary manslaughter as a lesser included offense, rather than an inferior degree offense. However, the State argues the error was harmless, reasoning that Appellant was arguably not entitled to the provision of a voluntary manslaughter instruction based upon the absence of evidence Appellant acted as a result of a sudden fit of rage or passion.

> {¶27} Generally, our review of "whether jury instructions correctly state the law is *de novo*." *State v. Kulchar*, 4th Dist. Athens No. 10CA6, 2015-Ohio-3703, 2015 WL 5313080, ¶15; citing *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, 2009 WL 3236206, ¶34. "[R]eversible error should not be predicated upon one phrase or one sentence in a jury charge; instead, a reviewing court must consider the jury charge in its entirety." *Id.*; citing *State v. Porter*, 14 Ohio St.2d 10, 13, 235 N.E.2d 520 (1968). "[I]f an instruction correctly states the law, its precise wording and format are within the trial court's discretion." *Kulchar* at ¶15.

> {¶28} However, implicit in Appellant's argument is the fact that he failed to object to the voluntary manslaughter instruction given by the trial court. Thus, he has waived all but plain error. " 'To constitute plain error, a reviewing court must find (1) an error in the proceedings, (2) the error must be a plain, obvious or clear defect in the trial proceedings, and (3) the error must have affected "substantial rights" (i.e., the trial court's error must have affected the trial's outcome).' " *State v. Blanton*, 4th Dist. Adams No. 16CA1031, 2018-Ohio-1275, 2018 WL 1611408, ¶85; quoting *State v. Dickess*, 174 Ohio App.3d 658, 2008-Ohio-39, 884 N.E.2d 92, ¶31 (4th Dist.); citing *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001), and *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240.

{¶29} " 'Furthermore, notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.' " *Blanton* at ¶85; citing *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), and *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "A reviewing court should notice plain error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* " 'A defective jury instruction does not rise to the level of plain error unless the defendant shows that the outcome of the trial clearly would have been different but for the alleged erroneous instruction.' " *Blanton* at ¶87; quoting *Dickess* at ¶32; citing *State v. Campbell*, 69 Ohio St.3d 38, 41, 630 N.E.2d 339 (1994), and *Cleveland v. Buckley*, 67 Ohio App.3d 799, 805, 588 N.E.2d 912 (8th Dist.1990).

{¶30} Appellant argues the jury instructions provided by the trial court improperly foreclosed the jurors from considering voluntary manslaughter in the event they found that the prosecution had proven the elements of aggravated murder and murder. Appellant further argues that the defective instructions deprived him of his constitutional right to a jury finding as to the presence of sudden passion or sudden fit of rage, as a circumstance mitigating aggravated murder and murder to voluntary manslaughter. Appellant argues the trial court further confused the jury by providing a lesser included offense instruction, when voluntary manslaughter is, instead, an inferior degree offense of aggravated murder and murder.

{¶31} The trial court instructed the jury as follows:

"If the defendant failed to establish the defense of voluntary manslaughter, the State still must prove to you beyond a reasonable doubt that the defendant knowingly caused the death of Samuel Nicholson, II.
* * *
If you find that the State proved beyond a reasonable doubt all the essential elements of any one or more of the offenses charged in the separate counts in the indictment, your verdict must be guilty *45 as to such offense or offenses according to your finding. If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of any one or more of the offenses charged in the separate counts of the indictment, your verdict must be not guilty as to such offense or offenses according to your findings. You will then continue your deliberations to decide whether the State has proved beyond a reasonable

doubt all the essential elements of the inferior degree offense of voluntary manslaughter. If all of you are unable to agree on a verdict of either guilty or not guilty of any or all of the charged offenses, then you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all the essential elements of the inferior degree offense of voluntary manslaughter. If the evidence warrants it, you may find the defendant guilty of an offense lesser than that charged in the indictment; however, notwithstanding this right, it is your duty to accept the law as given to you by the court, and if the facts and law warrant a conviction of the offense charged in the indictment, then it is your duty to make such a finding uninfluenced by your power to find a lesser offense.

* * *

Next page is the inferior degree of voluntary manslaughter. This charge shall only be considered if either of the following apply:
One: The defendant has been found not guilty of aggravated murder, murder, and felony murder;
Or Two: You are unable to reach a verdict with respect to aggravated murder, murder, and felony murder.

Thus, the trial court instructed the jury that voluntary manslaughter was (1) an inferior degree offense; (2) a lesser included offense; and (3) also a defense. It further instructed the jury that the burden of proving the elements of voluntary manslaughter was upon the State, rather than the defendant, and that it must be proven by proof beyond a reasonable doubt, rather than by a preponderance of the evidence.

{¶32} As this Court noted in *State v. Goff*, 4th Dist. Lawrence No. 11CA20, 2013-Ohio-42, 2013 WL 139545, ¶46, " '[v]oluntary manslaughter is an inferior degree of murder." Quoting *State v. Alexander*, 4th Dist. Scioto No. 08CA3221, 2009-Ohio-1401, 2009 WL 795212, ¶62; *accord State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992); *see also State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294, paragraphs two and three of the syllabus.[2] As further set forth in *Goff* at ¶46:

"A defendant on trial for murder or aggravated murder bears the burden of persuading the fact finder, by a preponderance of the evidence, that he or she acted under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, R.C.

2903.03(A), in order for the defendant to be convicted of voluntary manslaughter rather than murder or aggravated murder. *State v. Rhodes*, 63 Ohio St.3d 613, 590 N.E.2d 261 (1992), syllabus."

Additionally, as explained in *Goff* at ¶47, "when a voluntary manslaughter instruction is appropriate, a trial court should instruct the jury 'to consider the mitigating evidence to determine whether [the defendant] proved voluntary manslaughter.' " Citing *State v. Benge*, 75 Ohio St.3d 136, 140–141, 661 N.E.2d 1019 (1996).

{¶33} As set forth above, the State conceded the jury instructions were erroneous to a certain extent. Thus, we will assume the trial court's instructions, as they pertained to the consideration of voluntary manslaughter as an inferior degree offense, were defective and prevented the jury from considering the voluntary manslaughter charge. However, as observed in *Goff*, "in order for there to be reversible error, there must be prejudice to the appellant." *Goff* at ¶48 (internal citations omitted). In the case sub judice, as was the situation in *Goff*, Appellant cannot demonstrate prejudice because the evidence introduced at trial did not warrant a voluntary manslaughter instruction.

{¶34} In order for a voluntary manslaughter instruction to be given, there is a requirement of both objective and subjective evidence. *Goff* at ¶50. Appellant first had to show "evidence of reasonably sufficient provocation occasioned by the victim * * * to warrant such an instruction. *Id.*; quoting *Shane* at 630, 590 N.E.2d 272. This determination is to be made using an objective standard. *Goff* at ¶50. For example, we have explained that " '[f]or provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control.' " *Id.*; quoting *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶81; in turn quoting *Shane* at 635, 590 N.E.2d 272. If the objective component is satisfied, the inquiry then "shifts to the subjective component, which considers whether this particular actor, in this particular case, was actually under the influence of sudden passion, or was in a sudden fit of rage. *Goff* at ¶51; citing *Shane* at 634, 590 N.E.2d 272.

{¶35} We explained analysis of the subjective component in *Goff* as follows:

"When analyzing the subjective component, 'evidence supporting the privilege of self-defense, i.e., that the defendant feared for [her] own and [others'] personal

7

safety, does not constitute sudden passion or a fit of rage as contemplated by the voluntary manslaughter statute.' *State v. Harris*, 129 Ohio App.3d 527, 535, 718 N.E.2d 488 (10th Dist.1998). 'While self-defense requires a showing of fear, voluntary manslaughter requires a showing of rage, with emotions of "anger, hatred, jealously, and/or furious resentment." ' *State v. Levett*, 1st Dist. No. C-040537, 2006-Ohio-2222 [2006 WL 1191851], ¶29, quoting *State v. Perdue*, 153 Ohio App.3d 213, 2003-Ohio-3481, 792 N.E.2d 747, ¶12 (7th Dist.), in turn quoting *Harris* at 535 [718 N.E.2d 488]; *accord State v. Sudderth*, 4th Dist. No. 07CA38, 2008-Ohio-5115 [2008 WL 4436120], ¶14; *see also* [*State v. Hendrickson*, 4th Dist. Athens No. 08CA12, 2009-Ohio-4416, 2009 WL 2682158, ¶45–46]; *State v. Caldwell*, 10th Dist. No. 98AP–165, 1998 WL 890232, *7 (Dec. 17, 1998)." *Goff* at ¶52.

{¶36} Assuming arguendo the objective component was met, the record before us reveals that Appellant introduced no subjective evidence that he killed the victim while he was under the influence of sudden passion or in a sudden fit of rage. Therefore, Appellant cannot demonstrate that he was prejudiced if the trial court's jury instructions did, in fact, prevent the jury from considering the voluntary manslaughter instruction. As set forth above, Appellant argued theories of voluntary manslaughter, as a result of provocation. He also raised the affirmative defense of self-defense. In his trial testimony, Appellant alleged he was frightened by threats made by the victim towards him in the days leading up to the incident. He also testified that in shooting the victim, he acted out of fear because he was afraid if he didn't shoot, the victim would shoot him first. There is no evidence, after a thorough review of Appellant's trial testimony, that he was actually under the influence of sudden passion or in a sudden fit of rage when he shot the victim. Thus, there was insufficient evidence introduced at trial to warrant a voluntary manslaughter instruction. As such, assuming the manner in which the trial court instructed the jury prevented the jury from considering the voluntary manslaughter charge, Appellant cannot demonstrate he was prejudiced by the alleged error. Accordingly, we find no merit to Appellant's second assignment of error and it is overruled.

*State v. Blevins, supra.*

Respondent first asserts this Ground for Relief is procedurally defaulted by trial counsel's failure to make a contemporaneous objection. The current procedural default doctrine in habeas

corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims

that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020),

citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a

habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786

F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*);

*Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th

Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261

F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule
> that is applicable to the petitioner's claim and that the petitioner
> failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually
> enforced the state procedural sanction, citing *County Court of Ulster
> County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777
> (1979).
>
> Third, the court must decide whether the state procedural forfeiture
> is an "adequate and independent" state ground on which the state
> can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not
> complied with and that the rule was an adequate and independent
> state ground, then the petitioner must demonstrate under *Sykes* that
> there was "cause" for him to not follow the procedural rule and that
> he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357

(6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio has a relevant procedural rule requiring contemporaneous objection to error. *State v.

Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio

St. 3d 144, 162 (1998). The Sixth Circuit has repeatedly held this is an adequate and independent

state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

Petitioner points to the second branch of the *Maupin* analysis and argues the Fourth District did not actually enforce the contemporaneous objection rule against him because it decided the merits of this claim under a plain error standard of review.

> The appellate court's application of the plain error standard does not constitute the enforcement of the contemporaneous-objection rule as stated in Ohio Crim. R 30, which bars appellate consideration entirely absent a timely objection. Rather, the appellate court's review of the merits under the plain error standard nullified the procedural bar, thereby entitling Petitioner to federal habeas review.

(Reply/Traverse, ECF No. 13, PageID 994). The Magistrate Judge disagrees. The Sixth Circuit has held that plain error review is an enforcement, not a waiver, of the contemporaneous objection rule. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

Petitioner asserts *Engle v. Isaac*, 456 U.S. 107 (1982), is to the contrary (Reply/Traverse, ECF No. 13, PageID 994-95). Petitioner quotes a portion of footnote 44 to Justice O'Connor's opinion to the effect that if the Ohio courts had "exercised their discretion" to consider the merits of petitioners'

claims, federal review would not be barred.  However, the footnote concludes: "Our opinions, however, make clear that the States have the primary responsibility to interpret and apply their plain-error rules. Certainly we should not rely upon a state plain-error rule when the State has refused to apply that rule to the very sort of claim at issue."  The Sixth Circuit precedent cited above shows the development of the plain error doctrine:  if the Ohio courts themselves waive the lack of contemporaneous objection and consider the merits *de novo*, that will allow consideration of the merits in habeas.  If, however, the contemporaneous objection rule is enforced by applying plain error review, the claim is barred from merits review in federal habeas.

In addition to asserting the Fourth District did not enforce the contemporaneous objection rule, Petitioner asserts the ruling is not "independent" of federal law as required by the third branch of the *Maupin* analysis (Reply/Traverse, ECF No. 13, PageID 995, relying on *Knuckles v. Rogers*, 983 F.2d 1067 (table)(6th Cir. 1993)).  That is an accurate reading of *Knuckles*, but the Magistrate Judge notes it is an unpublished decision and in *Stallings v. Burt*, 772 Fed. Appx. 296 (6th Cir. 2019), the Court noted that holding had been repeatedly rejected. *Id.* at *299 citing, inter alia, *Wogenstahl, supra.*  Nor does the "plain statement" rule of *Michigan v. Long*, 463 U.S. 1032 (1963), save this claim from procedural default.  See *Blevins, supra*, at ¶ 28.  Ground for Relief One is in fact procedurally defaulted.

Should the Court find procedural default, Blevins urges us to go further and find it is excused by his trial attorney's failure to object (Reply/Traverse, ECF No. 13, PageID 996-98).  Ineffective assistance of trial counsel can constitute cause to excuse a procedural default. *Murray v. Carrier,* 477 U.S. 478, 494-95 (1986).  However, the claim of ineffective assistance of trial counsel must first be submitted to the state courts and properly exhausted like any other constitutional claim. *Edwards v. Carpenter*, 529 U.S. 446 (2000).  As Petitioner notes he did make that claim to the Fourth District Court of Appeals and brings it forward as his Third Ground for Relief.  That claim

is analyzed below. Based on that analysis, Petitioner has not shown excusing cause and prejudice and his First Ground for Relief should be dismissed as procedurally defaulted.

In the alternative, should the Court reach the merits, the First Ground for Relief should be dismissed on that basis as well.

As noted above, the Fourth District analyzed the merits of the Second Assignment of Error on a plain error basis. While such an analysis does not waive any procedural default, the resulting merits analysis is still entitled to deference under 28 U.S.C. § 2254(d)(1). *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009); *Kittka v. Franks*, 539 Fed. Appx. 668, 672 (6th Cir. 2013); *Bond v. McQuiggan*, 506 Fed. Appx. 493, 498 n. 2 (6th Cir. 2013); *Stojetz v. Ishee*, 2014 U.S. Dist. LEXIS 137501 *231 (S.D. Ohio Sept. 24, 2014)(Frost, D.J.). "*Fleming* makes clear as day that a state court's plain-error review of an issue may receive AEDPA deference when the state court addresses the merits of the federal claim." *Frazier v. Jenkins*, 770 F.3d 485 (6th Cir. 2014)(Sutton, J. concurring).

The Fourth District addressed Blevins' Sixth and Fourteenth Amendment claims and held he was not entitled to any jury instruction on voluntary manslaughter because there was insufficient record evidence to support such a finding. *Blevins, supra*, ¶¶ 33-36.

Petitioner asserts this was an unreasonable determination of the facts based on the evidence of record and thus is not entitled to deference under 28 U.S.C. § 2254(d)(2)(Reply/Traverse, ECF No. 13, PageID 998). He does not assert that the Fourth District inaccurately summarized Petitioner's testimony, but argues there was more evidence to support a voluntary manslaughter conviction:

> Dr. Ellis testified that in his opinion ten or eleven shots were fired.

Special Agent Todd Fortner testified that the condition of the apartment showed obvious signs of a struggle…He testified that it was easy to conclude that whoever had the gun emptied it.

Dwight Haddox testified that…the day after the murder…while in the car with [Petitioner]…[he] made a lout outburst, almost a cry, and stated he had killed Sammy.

Detective Phil Roar…testified that he examined cell phones and phone records…He testified to a series of text messages between [Petitioner] and the victim leading up to the day of the murder which suggested a disagreement was beginning to develop..."

Appellant's main theory at trial seemed to be that he was justified in killing the victim, either based upon a theory of provocation or self-defense…He stated he advised [the victim] that he had the $700.00, but that the victim began arguing with him. He stated they began cussing at one another and that the victim pushed him down to the ground…He testified that the victim began to reach for a gun…"

(Reply/Traverse, ECF No. 13, PageID 999, quoting selectively from *Blevins, supra*, ¶¶ 9-14). In addition to the quoted testimony, there is other testimony indicating whatever happened between the victim and Petitioner was not the result of sudden rage or passion, particularly Blevins' having sent a photo of the murder weapon through Facebook Messenger with the comment that he had some "b.s." to take care of. *Id.* at ¶ 12. Taken together, this testimony supports the inference that there was a dispute between Blevins and the victim which was building up over some period of time and which in Blevins' mind required addressing with a semi-automatic weapon. Blevins' own testimony about his state of mind was that he was fearful of being shot by the victim unless he shot first, a state of mind consistent with self-defense[1]. Given that state of the record, the Magistrate Judge cannot say the Fourth District's determination of fact was unreasonable, based on the evidence. Because the fact determination was not unreasonable, it is entitled to deference under § 2254(d)(2). And it is a question of Ohio law how much evidence is necessary to raise for jury consideration a provocation defense.

---

[1] Petitioner notes that the defense theories of self-defense and provocation can be jointly raised (Reply/Traverse, ECF No. 13, PageID  999). But the states of mind of fear and sudden rage are distinguishable.

14

Because the Fourth District decided Blevins was not entitled to a voluntary manslaughter instruction under Ohio law and the evidence as presented, it did not reach the underlying question of whether this Assignment of Error presented a constitutional claim at all.  Respondent argues it does not, i.e., that Ground One is not cognizable in habeas (Return, ECF No. 9, PageID 946-48).  Petitioner does not respond to this argument as it applies to Ground One.

The State conceded on appeal that the voluntary manslaughter instruction given misstated Ohio law.  In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned; taken as a whole they must be so infirm that they rendered the entire trial fundamentally unfair. *Waddington v. Sarausad,* 555 U.S. 179, 192-94 (2009); *Henderson v. Kibbe,* 431 U.S. 145 (1977).  The only question for a habeas court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62 (1991), *quoting Cupp v. Naughten*, 414 U.S. 141 (1973).  The category of infractions that violate fundamental fairness is very narrow.  *Levingston v. Warden*, 891 F.3d 251 (6th Cir.  2018); *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), *citing Dowling v. United States*, 493 U.S. 342, 352 (1990), *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020), petition for certiorari pending in Sup. Ct. Case No. 20-1298.  Petitioner points to no Supreme Court precedent holding an instruction of the variety given here violates fundamental fairness.  In general there is no constitutional requirement to instruct on lesser-included offense in non-capital cases. *McMullan v. Booker,* 761 F.3d 662, 667 (6th Cir. 2014).  The same logic should apply to lesser degree offenses such as voluntary manslaughter in an aggravated murder case.

In sum, the First Ground for Relief should be dismissed as procedurally defaulted and because it fails on the merits.

**Ground Two: Erroneous Answer to Jury Questions**

In his Second Ground for Relief, Petitioner avers that the jury asked a question during deliberations and the trial judge repeated the error from Ground One in his response.

Blevins presented this claim to the Fourth District as part of his Fourth Assignment of Error and that court decided the claim as follows:

{¶42} In his fourth assignment of error, Appellant contends the trial court's incorrect, incomplete, and confusing responses to the jury's questions amounted to an abuse of discretion and deprived him of his right to a fundamentally fair trial and reliable jury verdict. More specifically, Appellant argues the trial court abused its discretion in providing answers to questions posed by the jury during deliberations regarding (1) the voluntary manslaughter instruction; and (2) a request for a copy of the transcript containing a portion of Dwight Haddox's testimony. Appellant further argues the second question posed by the jury stemmed from a misleading argument made by the prosecutor during closing arguments, which Appellant contends rose to the level of prosecutorial misconduct. The State responds by arguing that the trial court did not abuse its discretion in answering the jury's questions in the manner that it did, and that any error in the statements made by the prosecutor did not rise to the level of prosecutorial misconduct.

{¶43} As recently observed by the Third District Court of Appeals in *State v. Robinson*, 3rd Dist. Hancock No. 5-16-13, 2017-Ohio-2703, 2017 WL 1842895, ¶17:
" 'When a jury during its deliberation requests "clarification of instructions previously given, a trial court has discretion to determine its response to that request." ' *State v. Juntunen*, 10th Dist. Franklin Nos. 09AP–1108 and 09AP-1109, 2010-Ohio-5625 [2010 WL 4681888], ¶19, quoting *State v. Carter*, 72 Ohio St.3d 545 [651 N.E.2d 965] (1995), paragraph one of the syllabus. 'A reversal of a conviction based upon a trial court's response to such a request requires a showing that the trial court abused its discretion.' *State v. Castile*, 10th Dist. Franklin No. 13AP-10, 2014-Ohio-1918 [2014 WL 1851942], ¶23, citing *Carter* at 553 [651 N.E.2d 965] and *State v. Young*, 10th Dist. Franklin No. 04AP-797, 2005-Ohio-5489 [2005 WL

16

2650010], ¶35. An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 [404 N.E.2d 144] (1980)."

The *Robinson* court further explained that:

" ' "A trial court's response to a jury's question "when viewed in its entirety, must constitute a correct statement of the law and be consistent with or properly supplement the jury instructions that have already been given." ' *Juntunen* at ¶19, quoting *State v. Preston–Glenn*, 10th Dist. Franklin No. 09AP-92, 2009-Ohio-6771 [2009 WL 4936374], ¶28. ' "An appellate court will only find reversible error where a jury instruction has, in effect, misled the jury." ' *Id.*, quoting *State v. Hull*, 7th Dist. Mahoning No. 04 MA 2, 2005-Ohio-1659 [2005 WL 775885], ¶45, citing *Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 312 [649 N.E.2d 1219] (1995), and citing *Carter* at 553 [651 N.E.2d 965]."

{¶44} Appellant first contends the trial court abused its discretion responding to the jury's request for a clarification on the aggravated murder, murder and voluntary manslaughter instructions. The trial transcript includes the handwritten notes from the jury containing questions for the trial court. The first question asked by the jury contained two parts and stated as follows:

"1. If found not guilty on Aggravated Murder Count 1, do we continue to counts 2-4 and Involuntary Manslaughter or just stop at counts 1-4?

2. If found not guilty on count one, do counts 2-4 still apply?"

The trial court provided the following response to those questions: "First proceed through counts 1-4. Then, read the Involuntary Manslaughter instructions on the Involuntary Manslaughter verdict form and use those as a guide to decide if Involuntary Manslaughter should be considered."

{¶45} Appellant argues the question posed by the jury indicated "the juror's confusion over its authority to consider mitigating circumstances as laid out in voluntary manslaughter." Appellant further argues the answer provided by the trial court "contributed to the confusion and was, therefore, prejudicial error." However, as we explained in our analysis of Appellant's second assignment of error,

17

> even assuming the trial court erred in instructing the jury on
> voluntary manslaughter, because Appellant was not entitled to an
> instruction on voluntary manslaughter we found no prejudice and
> therefore determined the error was harmless. The same reasoning
> applies to this argument. Because Appellant was not entitled to an
> instruction on voluntary manslaughter, it cannot be argued that any
> error in the original instruction or in the trial court's answer to the
> jury's question was prejudicial. Thus, the error does not constitute
> reversible error.

*State v. Blevins, supra.*

Respondent asserts Ground Two is not cognizable in habeas corpus and, alternatively, that it is procedurally defaulted on the same basis as Ground One, lack of contemporaneous objection. The Magistrate Judge agrees that this claim is procedurally defaulted for lack of a contemporaneous objection, a rule the Fourth District enforced.  The fact that the State conceded that the voluntary manslaughter instruction was erroneous as a matter of state law does not mean the conviction is unconstitutional.  First of all the Fourth District reasonably determined, as a matter of both fact and Ohio law, that Blevins was not entitled to any voluntary manslaughter instruction.  Second, an error in the statement of state law on a lesser offense does not rise to the level of a federal constitutional violation.

Ground Two should be dismissed as procedurally defaulted and without merit.


**Ground Three**: **Ineffective Assistance of Trial Counsel**

In his Third Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel in six different ways.  Blevins presented this claim as his Fifth Assignment of Error on direct appeal and the Fourth District overruled it, writing:

{¶54} In his fifth assignment of error, Appellant contends he was denied his constitutional right to the effective assistance of counsel due to the combined prejudicial impact of instances of deficient performance. Thus, Appellant essentially contends that cumulative errors by defense counsel affected the outcome of his trial. The State contends there is no evidence that but for the alleged deficiencies of defense counsel the trial would have had a different outcome, in light of the significant amount of other evidence which led to the conclusion Appellant was guilty of the indicted offenses.

{¶55} To prevail on a claim of ineffective assistance of counsel, a criminal appellant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Knauff*, 4th Dist. Adams No. 13CA976, 2014-Ohio-308, 2014 WL 346691, ¶23. In Ohio a properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶62. Thus, in reviewing a claim of ineffective assistance of counsel, we must indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 697, 104 S.Ct. 2052. Failure to satisfy either part of the test is fatal to the claim. *Id.*; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

{¶56} Appellant alleges five instances of ineffective assistance by his trial counsel as follows:

> "1. Defense counsel's inept cross-examination of the lead detective resulted in the jury learning about Blevin's post-arrest exercise of his privilege against self-incrimination."
> "2. Defense counsel's inept cross-examination of the lead detective regarding his theory of the case resulted in the jury hearing his opinion that Blevins is guilty of murder."
>
> "3. Defense counsel failed to object to blatantly inadmissible 'other acts' testimony that portrayed Blevins as an individual having a propensity for violence involving the use of firearms."

"4. Defense counsel failed to effectively impeach Dwight Haddox's testimony regarding his recollection of statements relating to the shooting, failed to object to the prosecutor's misrepresentation of his testimony, and failed to object to the trial judge's inadequate response to the jury's questions regarding the testimony."

"5. Defense counsel failed to object to a defective voluntary manslaughter instructions [sic] and to the judge's erroneous response to the jury's questions expressing confusion regarding the instructions."

{¶57} Appellant's first and second allegations of ineffective assistance both claim that his trial counsel ineptly cross-examined Detective Jeffery George. First, Appellant argues his trial counsel's inept cross examination of Detective George led to the jury learning about his post-arrest exercise of his privilege against self-incrimination. A review of the record reveals the following exchange during trial between defense counsel and the detective:

"Q: Were you aware of the fact that my client went to Bret Taylor's immediately after this murder?
A: I was not aware of that. No.
Q: You weren't aware of that until today?
A: Today is the first I heard that your client – your client nor Bret Taylor would not speak with me.
Q: Okay. So Bret wouldn't cooperate?
A: No. He asked for a lawyer."
Another exchange took place during later cross-examination as follows:
"Q: Were you present when Mr. Blevins was arrested?
A: Yes, I was.
Q: And what was he wearing?
A: I don't remember.
Q: He wasn't wearing red basketball shorts, was he?
A: No.
Q: So do you have an explanation of how a guy that wears red basketball shorts – when did you arrest him?
A: It was like a week later after the murder.
Q: After the murder, a week?
A: Yea. Approximately a couple days to a week.
Q: All right. Do you know where my client went?
A: No. Again, your client wouldn't speak with me.
Q: Well, I understand that. But in the end here you've never investigated where Mr. Blevins ended up within an hour or so after the shooting?

20

> A: Right after the shooting, no. All I know is he had went [sic] to McArthur after that.
>
> Q: Well that's the point I'm making. Do you have any indication that my client left the Arnett apartment driving Bret – do you know if Bret Taylor's car was there?
>
> A: That I do not know."

Thus, two different times, in response to two different questions, the detective referenced the fact that Appellant would not speak with him, and thus had exercised his constitutional right against self-incrimination.

{¶58} Appellant concedes that the detective's answers were not responsive to the questions asked by counsel, but he argues the open-ended manner in which counsel framed his questions allowed the detective to slip his post-arrest silence into his answers. Appellant cites this Court's prior reasoning in *State v. Harper*, 4th Dist. Vinton No. 11CA684, 2012-Ohio-4527, 2012 WL 4482985, for the proposition that an attorney's failure to take measures to prevent the jury form [sic] hearing testimony regarding his client's post-arrest silence may constitute deficient performance. We noted in *Harper* as follows at ¶16:

> " 'An accused who asserts his Fifth Amendment right to silence should not have the assertion of that constitutional right used against him.' *State v. Treesh*, 90 Ohio St.3d 460, 479, 739 N.E.2d 749 (2001), citing *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). '[E]vidence introduced by the state during its case in chief regarding the defendant's exercise of his right to remain silent during interrogation violates the Due Process Clause of both the state and federal constitutions.' *State v. Perez*, 3d Dist. No. 4-03-49, 2004-Ohio-4007 [2004 WL 1717654], ¶10, citing [*State v.*] *Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, at ¶16–18. 'This rule enforces one of the underlying policies of the Fifth Amendment, which is to avoid having the jury assume that a defendant's silence equates with guilt.' *Id.*, citing *Leach* [102 Ohio St.3d 135], 2004-Ohio-2147 [807 N.E.2d 335], at ¶30; *Murphy v. Waterfront Comm. of New York Harbor*, 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964)."

{¶59} *Harper* involved an allegation that defense counsel failed to object to repeated instances of the State eliciting testimony that the defendant had invoked his right against self-incrimination. *Id.* at ¶28. Here, however, it was not the State that elicited the problematic

21

testimony, it was defense counsel while cross-examining the State's witness. Further, the case at bar does not involve a situation where the State was attempting to use Appellant's silence against him. As noted by Appellant in his brief, the detective's answers were not responsive to the question asked by defense counsel. Moreover, Harper involved repeated instances of the State drawing the juror's attention to the defendant's post-arrest silence, constitutional violations which this Court stated "pervaded the entire trial." *Id.* at ¶33. Here, there were two quick references to Appellant's post-arrest silence that were unintentionally elicited during cross-examination, which can hardly be described as pervading the entire trial. Thus, we cannot conclude, based upon the facts before us, that defense counsel should have anticipated the detective's answer to the question would have included a reference to Appellant's post-arrest silence. As such, Appellant has not demonstrated deficient performance by his counsel in this regard and, as a result, we find no merit to this portion of Appellant's argument.

{¶60} Second, Appellant argues his trial counsel's inept cross examination of Detective George regarding his theory of the case resulted in the jury hearing his opinion that Appellant was guilty of murder. A review of the trial transcript reveals the following exchange during defense counsel's cross examination of Detective George:

> "Q: All right. Now, let's go through the stage of the proceeding here. So you determined that prolifically [sic] what the relationship was between Sammy Nicholson, Darrell Arnett, Chloe, my client, so you understand those people were involved?
> A: Yes.
> Q: All right. Now, what's your theory of what happened here?
> A: Honestly, my theory, I believe your client committed the murder of Sammy Nicholson.
> Q: Well, tell me what your theory is, why he was there?
> A: I have no reason. Possibly the drugs that everybody talked about.
> Q: Well, were you aware of the fact that there was [sic] mutual threats:
> A: Briefly I might have heard that."

{¶61} The State contends that defense counsel was attempting to elicit testimony from the detective indicating the condition of the apartment showed signs of a struggle, which would lend support to Appellant's self-defense argument. As such, the State argues defense

22

counsel's question falls within the gambit of trial strategy. However, we tend to agree with Appellant's argument that "[t]here can be no conceivable strategic reason for a defense attorney to ask the lead detective in a homicide investigation an open-ended question that invites, or even encourages, the witness to offer a damaging opinion regarding the defendant's guilt." Thus, we agree with Appellant's argument that this action constituted deficient performance by trial counsel.

{¶62} Despite this finding, based upon the record before us we find no prejudice within the meaning of the *Strickland* test because the result of the trial would have been no different. Here, Appellant's only arguments on appeal regarding his culpability for the charged crimes are 1) he did not act with prior calculation and design; and 2) although he killed the victim, he did so as a result of provocation or in self-defense. As we have referenced multiple times herein, Appellant was not entitled a voluntary manslaughter instruction. Thus, his only viable theory at trial was one of self-defense, which is an affirmative defense. An affirmative defense does not negate the legal adequacy of the state's proof for purposes of submitting it to the jury. An affirmative defense involves an excuse or justification for doing an otherwise illegal act. See R.C. 2901.05(C)(2). It does not deny the existence of the act; it simply provides a legal justification for it. Thus, eliciting the detective's theory of the case did not place any testimony before the jury Appellant had not already conceded. Accordingly, Appellant cannot demonstrate prejudice as a result of counsel's actions and we therefore find no merit to this portion of his argument.

{¶63} Appellant's third allegation of ineffective assistance of counsel argues defense counsel failed to object to blatantly inadmissible "other acts" testimony that portrayed him as an individual having a propensity for violence involving the use of firearms. More specifically, Appellant argues that defense counsel failed to object to testimony from Chloe Brady indicating she stopped living with Appellant because she "overheard him behind a closed door and he said he was going to put a bullet in [her] head." The State does not respond to this allegation of ineffective assistance of counsel in its appellate brief.

{¶64} Again, Appellant admitted at trial that he went to the victim's house armed with a loaded gun and shot the victim multiple times. Further, he does not dispute that he caused the victim's death, but only that he acted in self-defense. The State introduced evidence that the victim died from multiple gun shot wounds. Additionally, expert testimony indicated several of the gunshot wounds were sustained

while the victim was in a defensive position with his arms up trying to shield himself, and in a downward trajectory, contrary to Appellant's argument that he shot the victim after the victim knocked him to the floor. Other evidence demonstrated all of the bullet holes and recovered bullets were on the side of the room where the victim was found deceased, and none were found anywhere else, indicating the victim did not shoot first or shoot back. Finally, Appellant admitted he sent a message stating he needed to "take care of some b.s" along with a photo of his gun to a friend, thus demonstrating a propensity for violence by his own actions and testimony. In light of the foregoing, even assuming there was no sound trial strategy that permitted defense counsel's failure to object, and to instead to ask further questions about Appellant's alleged statements on cross examination, Appellant cannot demonstrate the result of the trial would have been different. Therefore, he cannot establish ineffective assistance of counsel in this regard and we find no merit to this portion of his argument.

{¶65} Appellant's fourth allegation of ineffective assistance of counsel claims trial counsel 1) failed to effectively impeach Dwight Haddox's testimony regarding his recollection of statements relating to the shooting; 2) failed to object to the prosecutor's misrepresentation of his testimony; and 3) failed to object to the trial judge's inadequate response to the jury's question.

Appellant first argues that trial counsel was ineffective for failing to effectively impeach Dwight Haddox in response to the following testimony:

> "Q: Did he [Appellant] tell you anything about pulling the trigger?
> A: Something I heard, I don't know the exact words, but something about emptied the gun."
> Q: Did he tell you anything about being on the run?
> A: I kind of figured after that that he was on the run. I didn't know. I mean like I said, after all that, and I was by myself, like I say, after it all happened, then it sinks in and started thinking about everything and I thought well, I think that I better go to the Sheriff's station."

Appellant argues his trial counsel admitted in a motion for new trial that had he heard the statement by Haddox about the gun being emptied that he would have objected and then impeached the witness with a recording of his police interview and also called Appellant's mother to testify to contradict Haddox. Appellant points to the affidavit of Appellant's mother that was attached in support of

the motion for new trial, in which Mrs. Blevins avers that she and Haddox had a falling out and that he made threats that her son would "[go] down."

{¶66} Considering Appellant's trial counsel represented to the trial court that his failure to object was not trial strategy, and that he would have objected to Haddox's testimony had he heard it, we conclude Appellant has demonstrated deficient performance by his trial counsel. However, in light of the fact that Appellant admitted to shooting the victim multiple times, as well as testimony from Special Agent Todd Fortner that when Appellant's gun was found it was kicked back and open, indicating the gun was "completely expended," we cannot conclude trial counsel's failure to object to Haddox's testimony affected the outcome of the trial. Thus, because Appellant cannot demonstrate prejudice, he has failed to demonstrate ineffective assistance of counsel.

{¶67} Turning our attention now to Appellant's second and third claims, which allege trial counsel failed to make proper objections, we observe that "[a] trial counsel's failure to object is generally viewed as trial strategy and does not establish ineffective assistance." *State v. Teets*, 4th Dist. Pickaway No. 16CA3, 2017-Ohio-7372, 2017 WL 3726782, ¶71; citing *State v. Roby*, 3rd Dist. Putnam No. 12-09-09, 2010-Ohio-1498, 2010 WL 1266832, ¶44 (additional internal citations omitted). Appellant notes that in a post-trial motion for new trial filed by Appellant's trial counsel, counsel stated the failure to object here was not trial strategy. Trial counsel instead attributed his failure to object to "physical inattention." However, we have already determined under Appellant's fourth assignment of error that the prosecutor's reference to Haddox's statement during closing arguments was generally consistent with Haddox's testimony and was not a gross exaggeration or misrepresentation. We also determined under Appellant's fourth assignment of error that the trial court did not plainly err or abuse its discretion in responding to the jury's request for a transcript of Haddox's trial testimony with a denial and an instruction that the jury must rely on its collective memories regarding the testimony. Thus, assuming arguendo Appellant has demonstrated deficient performance, we cannot conclude he has demonstrated he has suffered any prejudice as a result. Thus, we find no merit to this portion of Appellant's argument.

{¶68} Finally, in light of our determination that Appellant was not entitled to a jury instruction on voluntary manslaughter, we summarily reject Appellant's fifth claim of ineffective of counsel,

which alleges trial counsel was ineffective based upon his failure to object to defective voluntary manslaughter instructions.

{¶69} Under the cumulative-error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995); citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus; *State v. Ruble*, 2017-Ohio-7259, 96 N.E.3d 792, ¶75 (4th Dist.). "Before *57 we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Smith*, 2016-Ohio-5062, 70 N.E.3d 150, ¶106 (4th Dist.); citing *State v. Harrington*, 4th Dist. Scioto No. 05CA3038, 2006-Ohio-4388, 2006 WL 2457218, ¶57. The cumulative error doctrine does not apply where the defendant "cannot point to 'multiple instances of harmless error.' " *See State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶148 (2014) ("And to the extent that Mammone more broadly invokes the doctrine of cumulative error, that doctrine does not apply because he cannot point to 'multiple instances of harmless error.' " *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995).). Based upon our analysis of the arguments raised under this assignment of error, we conclude the doctrine of cumulative error does not apply here. Accordingly, Appellant's fifth assignment of error is overruled.

*State v. Blevins, supra.*

Respondent concedes this Ground for Relief has been preserved for merits review, but argues this Court should defer to the Fourth District's decision as a not unreasonable application of *Strickland v. Washington,* 466 U.S. 668 (1984).

As to the first two asserted deficiencies in counsel's performance, Blevins incorporates his argument as to the first two grounds for relief (Reply/Traverse, ECF No. 13, PageID 1002). As to eliciting testimony showing Blevins invoked his Fifth Amendment privilege post-arrest, he argues "conduct that would be unlawful and constitutionally violative if committed by a prosecutor must constitute deficient performance if committed by defense counsel." *Id.* at PageID 1003, emphasizing the importance of Blevins' credibility to the outcome. As to allowing a detective to

give opinion evidence, Blevins rejects the Fourth District's conclusion that this did not allow any damaging information to be heard by the jury.  He argues that he presented sufficient evidence to show he acted in a sudden fit of passion or rage sufficient to reduce the offense to voluntary manslaughter. *Id.* at PageID 1005.  He continues

> Moreover, even if self-defense was Petitioner's only viable theory, that defense was an independent matter from the essential elements of the charged offenses. Thus, the Fourth District's decision—that trial counsel's solicitation of testimony concerning Petitioner's guilt did not result in prejudice—was contrary to clearly established federal law and Petitioner is therefore entitled to federal relief.

*Id.*

Finally, as to trial counsel's failure to impeach Dwight Haddox and to object to the prosecutor's mischaracterization of that testimony in closing, Blevins argues "[t]hese failures allowed the jury to consider inaccurate and uncontested mischaracterizations of Petitioner's statements and violated his right to a fair trial." *Id.* at PageID 1006.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing

*Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that

28

> counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

The Fourth District applied *Strickland* in evaluating Blevins's Fifth Assignment of Error. Thus the question for this Court is whether that application was objectively reasonable.  In reviewing ineffective assistance of trial counsel claims, we are commanded by the Supreme Court to be doubly deferential, first to the attorney's judgment[2], and then to the state courts' evaluation of that judgment. *Woods v. Etherton*, 578 U.S. ___, 136 S. Ct. 1149 (2016); *Burt v. Titlow,* 571 U.S. 12, 20 (2013); C*ullen v. Pinholster*, 563 U.S. 170, 190 (2011).

Petitioner's ineffective assistance of trial counsel claims are considered here in the order in which they are discussed in the Reply/Traverse.

**Failure to object to voluntary manslaughter instruction:**

The Fourth District reasonably determined there was no prejudice from failure to object because Blevins was not entitled to any voluntary manslaughter instruction.

**Eliciting Commentary Regarding Self-Incrimination:**

As Petitioner points out, the State may not elicit testimony that a defendant has invoked his or her right to remain silent.  But in the two instances of such testimony complained of here, the testimony was volunteered by a State's witness.  The questions defense counsel asked would not naturally have elicited a comment about post-arrest silence and the volunteered remark that Blevins would not cooperate was very brief.  It would almost certainly have called more attention to the

---

[2] No deference is due, however, to those omissions that the trial attorney admitted in the motion for new trial were not the result of tactical decisions.

statements if defense counsel had sought to have its stricken because it was volunteered.  Given the context, the Fourth's District's decision that it was not ineffective assistance of trial counsel to ask the questions in the form they were asked is not an unreasonable application of *Strickland*.

**Failure to Object to Opinion Testimony Regarding Petitioner's Guilt.**

The Fourth District agreed with Petitioner that asking the lead detective his theory of the case was deficient performance, but it found no resulting prejudice.  Petitioner cites the Fourth District as finding that, because Petitioner's only viable trial strategy was self-defense, "'eliciting the detective's theory of the case did not place any testimony before the jury [Petitioner] had not already conceded.' *Id*. Respectfully, the Fourth District's decision was contrary to clearly established federal law and is therefore grounds for federal relief."  (Reply/Traverse, ECF No. 13, PageID 1004).  With respect, Petitioner does not cite any United States Supreme Court precedent to the contrary.  *Id.* at PageID 1004-05.  Because, as the Fourth District found, Petitioner did not submit sufficient evidence of sudden passion or rage sufficient to entitle him to a voluntary manslaughter instruction and he admitted shooting the victim, self-defense was his only viable defense.

**Failure to Impeach and Failure to Object to Mischaracterized Testimony.**

Trial counsel admitted in the motion for new trial that there was material with which he could have impeached Dwight Haddox, both a prior statement that apparently was at least somewhat inconsistent and a possible showing of bias by testimony from Blevins' mother.  As the Fourth District points out at ¶ 66 of its opinion, there was other testimony about the murder weapon's having been fired multiple times, including an admission by Blevins and from a police officer that the weapon had been "emptied."  The Fourth District's conclusion that Blevins was not prejudiced by this deficiency in counsel's performance is not an unreasonable determination of the facts and is entitled to deference under 28 U.S.C. § 2254(d)(2).

**Ground Four:  Insufficient Evidence Regarding Prior Calculation and Design**

In his Fourth Ground for Relief, Petitioner asserts that there was insufficient evidence to convict him on the aggravated murder element of prior calculation and design.  Blevins presented this claim as his First Assignment of Error on direct appeal and the Fourth District decided it as follows:

{¶17} In his first assignment of error, Appellant contends his conviction for aggravated murder is not supported by sufficient evidence of "prior calculation and design" to satisfy the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution. Appellant argues that the fact he armed himself with a gun for his own protection because he anticipated a possibility of violence does not equate to "a scheme designed to implement a calculated decision to kill[,]" and that the State failed to prove beyond a reasonable doubt this element of aggravated murder. The State contends the jury verdict, including the finding of prior calculation and design, was supported by the testimony introduced at trial.

{¶18} A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence, an appellate court's inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Thompkins*, syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *E.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390, 678 N.E.2d 541.

{¶19} Thus, when reviewing a sufficiency of the evidence claim, an appellate court must construe the evidence in a light most favorable

31

to the prosecution. *E.g., State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001). Here, after our review of the record, we believe the State presented sufficient evidence to support the finding of prior calculation and design.

{¶20} The jury convicted Appellant of aggravated murder in violation of R.C. 2923.01(A), which provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another * * *." Appellant does not contest, under this assignment of error, that the State established that he purposely caused the death of the victim, Sammy Nicholson. Instead, he limits his argument to a claim that the State did not introduce sufficient evidence that he acted with prior calculation and design.

{¶21} "The phrase 'prior calculation and design' by its own terms suggests advance reasoning to formulate the purpose to kill. Evidence of an act committed on the spur of the moment or after momentary consideration is not evidence of a premeditated decision or a studied consideration of the method and the means to cause a death." *State v. Walker*, 150 Ohio St.3rd 409, 2016-Ohio-8295, 82 N.E.2d 1124, ¶18; *see also State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶151. As this Court recently observed in *State v. Phillips*, 4th Dist. Scioto No. 18CA3832, 2018-Ohio-5432, 2018 WL 7016584, at ¶28, "[t]here are three factors courts generally consider to determine whether a defendant acted with prior calculation and design: (1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or an almost instantaneous eruption of events? *Walker* at ¶20. Although these factors provide guidelines, there is no bright-line test for prior calculation and design, and each case instead turns upon the particular evidence introduced at trial. *Walker* at ¶19; *State v. McWay*, 3d Dist. Allen No. 1-17-42, 2018-Ohio-3618, 2018 WL 4293346, ¶16.

{¶22} Here, regarding the first factor, the State presented evidence that established Appellant and the victim knew one another and had a "business relationship" to the extent they cooperated with one another in the illegal sale of drugs. Further, the State introduced evidence indicating their relationship had recently become strained

because Appellant owed the victim $700.00 for drugs that were "fronted" to him to sell.

{¶23} Regarding the second factor, the State introduced evidence in the form of a text message that included a photo of Appellant's gun (the gun used in the murder), along with a comment stating Appellant needed to go "take care of some b.s." The evidence introduced at trial indicated Appellant sent this message from his phone to more than one individual the evening prior to the murder. The record further reveals that Appellant borrowed a vehicle to drive to the victim's residence at 5:00 in the morning, allegedly to pay him the money that was owed. However, instead of leaving the money in a grill outside the victim's apartment, as had been customary in the past, Appellant went into the victim's apartment with a loaded gun on his person. Additional evidence indicated an unspent bullet, of the same type used in the murder, was found in the vehicle Appellant drove, which supports an inference that he loaded the gun just prior to either driving to, or entering, the victim's residence.

{¶24} Finally, with respect to the final factor which considers the duration of the events at issue, the State argued Appellant went to the victim's residence with a mission and that he walked in and shot the victim without a struggle. As such, the State argued the incident was an "instantaneous eruption of events" which, in the State's view, mitigated in favor of a finding of prior calculation and design. Appellant argued that there was a struggle and that he shot the victim in self-defense after the victim shoved him to the ground. Appellant further argues that the State's theory that the murder occurred as part of an "instantaneous eruption of events" mitigates against, rather than in favor of, a finding of prior calculation and design.

{¶25} In truth, it cannot be discerned from the record whether this incident was a drawn-out struggle, or whether it was an instantaneous eruption of events. The crime scene certainly indicated a struggle had taken place, but that could have been a result of the struggle between Appellant and Darrell Arnett (the victim's roommate) after the victim was murdered. In any event the first two factors indicate Appellant planned to murder the victim, rather than simply go to his apartment in the middle of the night to pay him the money that was owed. As set forth above, the factors are only guidelines and there is no bright-line test. Based upon the evidence before it, we believe the jury could justifiably conclude that Appellant was determined to complete a specific course of action. Thus, the jury's aggravated murder conviction, including their finding of prior calculation and design, was supported by sufficient

evidence. Accordingly, Appellant's first assignment of error is overruled.

*State v. Blevins, supra.*

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

34

In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge

> simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

*Thompson v. Skipper*, 981 F.3d 476 (6th Cir.,2020). "To evaluate a sufficiency-of-the-evidence claim, we consider 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. (quoting *Jackson*, 443 U.S. at 324)."

Petitioner notes that the Fourth District relied on *State v. Walker*, 150 Ohio St. 3d 409 (2016), for a listing of factors to be considered in determining the prior calculation and design element, to wit, (1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or an almost instantaneous eruption of events? *Blevins* at ¶ 21, citing *Walker* at ¶20. Petitioner concedes that *Walker* is relevant, but contends "the evidence adduced at trial clearly demonstrated that the shooting was the direct result of a sudden affray rather than a product [of] prior calculation and design." This supposedly clear demonstration ignores all of Blevins' preparations for a lethal encounter, starting with displaying the firearm to others and stating he was going to use it to take care of "some b.s."[3] There was plainly sufficient

---

[3] Blevins' self-serving testimony at trial that it was some other "b.s." that required handling with a firearm is hardly

evidence for the jury to find prior calculation and design.  Blevins' Fourth Ground for Relief should therefore be dismissed on the merits.

**Ground Five: Exclusion from Critical Stage of Trial**

In his Fifth Ground for Relief, Petitioner argues he was excluded from the trial court's formulation of answers to jury questions.  Respondent concedes this claim is preserved for merits review.

Blevins presented this claim as his Third Assignment of Error on direct appeal and the Fourth District decided it as follows:

> {¶37} In his third assignment of error, Appellant contends that his exclusion from the proceedings involving responses to the jury's questions violated Crim.R. 43, which governs the presence of defendants at every stage of the criminal proceedings and at trial, with certain exceptions. He also contends he was deprived of his constitutional right to be present for all critical stages of the proceedings. "An accused has a fundamental right to be present at all critical stages of his criminal trial." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶100. "An accused's absence, however, does not necessarily result in prejudicial or constitutional error." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶90. " '[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, *and to that extent only*.' " *Hale* at ¶100; quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107–108, 54 S.Ct. 330, 78 L.Ed. 674 (1934), overruled on other grounds by *Malloy v. Hogan*, 378 U.S. 1, 17, 84 S.Ct. 1489, 12 L.Ed.2d 653, (1964). The question is whether his presence has a "reasonably substantial" relationship to "the fullness of his opportunity to defend against the charge." *Id.*; quoting *Snyder* at 105–106, 54 S.Ct. 330.

> {¶38} In his brief, Appellant appears to contend that neither he, nor his counsel were present when the trial court considered and responded in writing to written questions submitted by the jury during their deliberations. For instance, Appellant argues that Volume 4 of the trial transcript indicates there were no proceedings

conclusive.

held in open court in which he was present during the time in between the jury being released for deliberations and the announcement of the verdict nearly five hours later. A review of the transcript indicates no proceedings were held in open court during that time. However, the State represents that the written questions submitted by the jury were reviewed by the court and counsel, and then "returned to the jury following an agreed upon answer by all parties." Further, our review of the record indicates Appellant's trial counsel filed a post-trial motion for a new trial in which he referenced the fact that he was surprised by a statement contained in one of the jury's questions.

{¶39} Thus, contrary to Appellant's suggestion on appeal, it appears counsel was present and participated in a review of the jury's questions and may have even approved the answers provided to the jury by the trial court. We are unable to confirm this, however, as there is no reference to the jury's questions other than the fact that the jury's handwritten notes, along with the trial court's written answers, are taped onto a paper in the trial transcript. What is clear, however, is that there were no proceedings held in open court in response to the jury's submission of questions. Instead, it appears the trial court simply communicated with the jury via written answers to their written questions.

{¶40} In *State v. Lee*, 8th Dist. Cuyahoga No. 104682, 2017-Ohio-1449, 2017 WL 1407331, ¶66, the Eighth District Court of Appeals recently held that a court's "written response sent to the jury room was not a critical phase of the trial that required [the defendant's] presence." In *Lee*, much like in the case sub judice, the jury submitted written questions during their deliberations. *Id.* at ¶63. In response, the court met with the attorneys and drafted a written response that was provided to the jurors. *Id.* In reaching its decision, the *Lee* court relied upon the reasoning of *State v. Campbell*, 90 Ohio St.3d 320, 346, 738 N.E.2d 1178 (2000), which found no error " 'where a capital murder defendant was absent from an in-chambers discussion between the court and counsel regarding the trial court's response to a jury question.' " The *Lee* court noted that *Campbell* held as follows on this particular issue:

" 'Campbell had no right to be present at the legal discussion of how the question should be answered. Nor did he have a right to be present when the judge sent the note to the jury room. Although the oral delivery of jury instructions in open court is a critical stage of trial, the trial court here did not instruct the jury in open court; instead, he sent a note. A defendant benefits from his presence, and

> may be harmed by his absence, when instructions are given in open court. But these potential benefits and harms do not exist when the judge merely sends a note to the jury room. We therefore hold that the sending of the note was not a critical stage of the trial. (Citations omitted.) *Id.* at 346 [738 N.E.2d 1178]. *See also State v. Ferguson*, 8th Dist. Cuyahoga No. 86439, 2006-Ohio-799 [2006 WL 416614], ¶56 (concluding that "the discussion regarding the jury question was not a critical stage of the trial.").' "

> *Lee* at ¶61.

> {¶41} In light of the foregoing case law and consistent with the reasoning of the Supreme Court of Ohio in *State v. Campbell*, supra, we find the trial court's provision of written answers to written questions from the jury cannot be considered a critical stage of the proceedings to which Appellant had statutory and constitutional rights to be present. Accordingly, we find no merit to Appellant's third assignment of error and it is overruled.

*State v. Blevins, supra.*

Because the Fourth District decided this claim on the merits, the question before this Court is whether that decision was an unreasonable application of clearly established Supreme Court precedent. Petitioner relies first of *Fillippon v. Albion Vein Slate Co.,* 250 U.S. 56 (1919), but that case held only that the parties had a right to be present either in person or by counsel when a response to a jury question is formulated; the record makes it clear Blevins' counsel was present and the response was stipulated. *Rogers v. United States*, 422 U.S. 35 (1975), also relied on by Blevins, only holds that a defendant's counsel should be heard before a jury's questions are answered and the Court made this holding in interpreting Fed. R. Crim. P. 43, not the Constitution. The Fourth District's decision on this claim was neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

August 24, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.